**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DONALD R. PEVIA,              *

Plaintiff                     *

v.                             *         Civil Action No. ELH-18-3900

JEFFREY NINES,            *

Defendant               *
                              ***

## <u>MEMORANDUM OPINION</u>

Plaintiff Donald R. Pevia, who is a self-represented Maryland prisoner housed at the North Branch Correctional Institution ("NBCI"), filed suit against Acting Warden Jeffrey Nines under 42 U.S.C. § 1983. ECF 1.[1] He complains, *inter alia*, about an injury he sustained in his cell on June 28, 2018. *Id.* The Complaint includes several exhibits. And, Pevia has filed a supplement to his suit. ECF 5.

Nines has moved to dismiss or, in the alternative, for summary judgment. ECF 12. The motion is supported by a memorandum (ECF 12-1) (collectively, the "Motion") and several exhibits. Pevia was advised that he could oppose the motion (ECF 13) and sought and was granted an extension of time to respond, to and including November 15, 2019. ECF 14; ECF 15. But, he has filed nothing in opposition to the motion.

No hearing is needed to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, defendant's Motion, construed as a motion for summary judgment, shall be granted.

---

[1] Plaintiff also sued correctional officers Jon/Jane Doe as additional defendants, but has failed to properly identify these defendants. The Complaint against the Doe defendants shall be dismissed.

# I. Background

## A.      Pevia's Related Suit

In 2016, plaintiff reported to medical staff that his knee was injured while he played basketball. *See Pevia v. Pierce, et al.*, Civil Action No. ELH-18-3902, ECF 1 at 2. He underwent knee surgery in June 2017 for a tear to his anterior cruciate ligament. *Id.*; ECF 20-4. And, he claims that he reinjured his knee in June 2018. ECF 1 at 2. He filed suit in this Court against various health care providers, alleging inadequate medical care. That case is pending.[2]

## B.  Plaintiff's allegations

In this case, Pevia alleges a violation of his Eighth Amendment rights. He claims that he has been housed without a chair that he needs due to his knee injury. ECF 1. Moreover, he complains that his cell has flooded numerous times, it is unsanitary, and the flooding has created health risks to him. He seeks compensatory and punitive damages as well as injunctive relief, directing Nines to create a policy that all cells be properly cleaned when flooded and that chairs and proper bunk ladders be installed in all cells. *Id.* at 7.

As noted, plaintiff underwent knee surgery in June 2017. Pevia alleges that in June of 2017, while he was housed on disciplinary segregation, Lt. Walter Iser provided him with an order permitting a chair in his cell due to his knee injury. ECF 1 at 4. But, on an unspecified date, when plaintiff returned to disciplinary segregation, he was not permitted to have a chair unless approved by the housing unit manager. *Id.*

On June 28, 2018, while housed in Housing Unit 2, plaintiff was writing while laying on the floor of his cell, because chairs are not permitted in the cells of that housing unit. *Id.* While

---

[2] The Court may take judicial notice of the pendency of Pevia's other pending case. *See* Rule 201, Federal Rules of Evidence; *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

plaintiff was on the floor, his cellmate attempted to climb into the top bunk from the sink/toilet but fell on plaintiff, "smashing [plaintiff's] left knee into the concrete floor causing severe pain and swelling." *Id.* Plaintiff asserts that: "Defendant Jane/Jon Doe refused to provide me my chair once I returned to Disc. Seg." *Id.*

Additionally, plaintiff alleges that while housed in Housing Unit 1 from July 1, 2018 to August 21, 2018, his cell was flooded six times. *Id.* On each occasion he was not provided any type of cleaning materials, nor was he removed from the cell so that the cell could be cleaned. Rather, he was forced to use his sheets or whatever he could find to soak up the water and squeeze it into the toilet. *Id.* at 4-5. On two of the occasions, plaintiff states the water contained urine and feces and he was forced to use his bare hands to clean up the water. *Id.* at 5. On another occasion the inmate was HIV positive and plaintiff was forced to use his hands to clean up the flooding. *Id.*

On August 14, 2018, plaintiff heard screaming in the housing unit and jumped out of his bunk to see what was happening. *Id.* He was unaware his cell had flooded and he slipped, twisting his previously injured left knee. *Id.*

On August 21, 2018, Pevia's personal belongings, including legal papers, were damaged, presumably due to flooding in his cell. *Id.*

### C. Defendant's Response

Warden Nines avers that as the Acting Warden of NBCI he expects staff to comply with all directives and policies regarding inmate housing, security, health care, and prison facility conditions. ECF 12-2 (Nines Decl.), ¶ 3. But, Nines is not personally involved with providing medical care or mental health counseling to any NBCI inmate. *Id.* ¶ 4. Nines does not have authority to make decisions regarding inmate's medical care, nor does he have the authority to order medical staff to prescribe any medication or to perform any medical procedure or render any

treatment. *Id*. Additionally, as Warden, when responding to an inmate's administrative remedy procedure ("ARP") complaint, Nines relies on the investigation by staff to respond to the ARP complaint. *Id*., ¶ 5.

Lieutenant Iser was the Housing Unit Manager of Housing Unit 1 at NBCI, which is the disciplinary segregation unit where plaintiff was housed during the dates at issue. ECF 12-3 (Iser Decl.), ¶ 3. Inmates are housed on disciplinary segregation, as opposed to general population, if they are found guilty of an inmate rule violation. *Id*.

Iser avers that beginning in 2010 chairs were no longer permitted inside disciplinary segregation cells at NBCI due to security concerns, as inmates had been found cutting the chairs into pieces to use as homemade weapons, creating security risks to staff and other inmates. *Id*. ¶ 4. As the housing unit manager, it was within Iser's discretion to allow, on a case by case basis, an inmate to have a chair in his disciplinary segregation cell. *Id*. Iser avers that an example of when an inmate could be permitted a chair in his cell would be if there was a medical need. *Id*. When a chair was permitted it was for that period of disciplinary segregation confinement and Iser would notify the shift sergeants on the other shifts of his decision. *Id*. No formal documentation was made when a chair was permitted. *Id*.

Iser has no specific recollection of allowing plaintiff to have a chair in his segregation cell in June of 2017, as alleged. *Id*. ¶ 5. Nevertheless, Iser denies that he would have issued a standing order permitting plaintiff to have a chair in his cell if he was placed on disciplinary segregation. *Id*. When an inmate previously was permitted the use of a chair in his disciplinary segregation cell, a request to again use a chair during a subsequent period of disciplinary segregation would have been considered anew by Iser, and a determination would have been made as to whether there was a legitimate basis to permit the use of the chair. *Id*. ¶ 6. Iser denies that plaintiff made any

verbal or written requests to him to use a chair during the relevant period in 2018. *Id.*

On June 29, 2018, the day after the fall alleged in this case, plaintiff submitted a sick call slip seeking medical attention for his knee. But, the following day, a Release of Responsibility indicated he refused to be seen by medical personnel. ECF 12-4 (Medical Records) at 19-20. Plaintiff's knee was examined by medical staff on July 6, 2018. *Id.* at 32. He was described as walking into medical without difficulty, but slight swelling was observed on the left knee. *Id.* It was also noted that plaintiff was placed in Housing Unit 1 due to an alteration with his cellmate in Housing Unit 2. *Id.* Plaintiff requested photographs to document the swelling of his knee. *Id.*

Plaintiff was again seen by medical on July 11, 2018. *Id.* at 29. During the visit plaintiff reported that he was able to go up and down stairs, squat, complete errands around the prison, and perform all activities of daily living, without difficulty. *Id.* The following day plaintiff elected to attend outdoor recreation rather than his scheduled nurse visit. *Id.* at 25.

On October 16, 2018, Pevia was observed walking well to his medical visit and appeared fit and muscular. *Id.* at 21. He requested a chair in his cell. Plaintiff was advised: "No chairs in cell while inmate is in seg. Per security." *Id.*

From June 30, 2018 to March 5, 2019, plaintiff submitted 18 sick call requests for a variety of issues, including high blood pressure; knee, shoulder, and back pain; medication refills; suspected aneurysm; dental concerns; the need to review medical records; and his bowel movements. *Id.* at 2-19. None of the sick call slips concerned HIV or other medical concerns related to his cell being flooded with urine and feces. *Id.* Nor was he diagnosed or treated for any illnesses related to urine, feces, or HIV exposure. *Id.* at 21-33.

In particular, plaintiff submitted a sick call request on August 18, 2018, complaining that he twisted his knee while cleaning his cell during a flood and reporting that his cell was constantly

flooded and he had to clean it. ECF 12-4 at 12. The form did not mention being exposed to waste materials. *Id*. He was seen on August 21, 2018. *Id*. at 23. Plaintiff reported pain in his knee and swelling was observed. *Id*. No complaints regarding exposure to human waste were reported. *Id*.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[3]

---

[3] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *Id.* (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition,"

---

of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

To justify a denial of summary judgment on the ground that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be "'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (citation omitted), reversed on other grounds sub nom., *Gardner v. Ally Financial, Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d)

affidavit. *Id*. (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not requested discovery. As such, I am satisfied that it is appropriate to address defendant's Motion as one for summary judgment, because doing so will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there is a dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). Moreover, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

Moreover, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III. Discussion

#### A. Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*,

767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## B.      Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."

The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

In *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), the Supreme Court said: "The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." In other words, under the Eleventh

Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless an exception to sovereign immunity applies. *See Coleman v. Ct. of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." (internal quotation marks and citation omitted)).

A suit against a state official in that person's official capacity is the equivalent of a suit against the state itself. *Will* v. *Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (internal citation omitted); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," absent waiver or a valid congressional abrogation of sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); M*cCray v. Md. Dep't of Transp., Md. Transit Admin*., 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ*., 411 F.3d 474, 479 (4th Cir. 2005).

Notably, "[t]he Eleventh Amendment bar to suit is not absolute." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). For example, state sovereign immunity does not bar

federal enforcement actions. *Passaro v. Virginia*, 935 F.3d 243, 248 (4th Cir. 2019) (citing *Seminole Tribe*, 517 U.S. at 71 n.14).

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

Under the case of *Ex parte Young*, 209 U.S. 123, 128 (1908), "private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *cert. granted*, No. 18-877 (June 3, 2019); *see Stewart*, 563 U.S. at 254-55; *Ex parte Young*, 209 U.S. at 159; *Wright v. North Carolina*, 787 F.3d 256, 261 (4th Cir. 2015); *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). This exception to sovereign immunity "is designed to preserve the constitutional structure established by the Supremacy Clause." *Antrican*, 290 F.3d at 184; *see Stewart*, 563 U.S. at 254-55 (describing the *Ex parte Young* exception as "necessary to 'permit the federal courts to vindicate federal rights'") (citation omitted). It rests on the notion "that a State officer who acts in violation of the Constitution is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.'" *Antrican*, 290 F.3d at 184 (quoting *Ex parte Young*, 209 U.S. at 160); *see Stewart*, 563 U.S. at 255 ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.").

This doctrine creates only a "narrow" exception to the Eleventh Amendment, however. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993); *see Booth v. State of Md.*, 112 F.3d 139, 142 (4th Cir. 1997) ("*Ex Parte Young* represents a limited exception to Eleventh Amendment immunity[.]").  To determine whether the *Ex parte Young* exception to Eleventh Amendment immunity applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md*., 535 U.S. 635, 645 (2002) (citation omitted).  A "prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies [this] 'straightforward inquiry.'"  *Id.*  So too does a prayer for a declaratory judgment, because although it may seek relief for past as well as future violations of federal law, "[i]t does not impose *upon* the State 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.'"  *Id.* (emphasis in *Verizon*) (quoting *Edelman*, 415 U.S. at 668).

Defendant Nines is a State employee.  *See* Md. Code (2015 Repl. Vol.), State Gov't § 12-101(a) (defining "state personnel"). Therefore, to the extent that Pevia is seeking damages from the Warden in his official capacity, he has asserted a claim against the State of Maryland.  Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Will,* 491 U.S. at 66; *Dyer v. Md. State Bd. of Educ.,* 187 F. Supp. 3d 599, 611 & n.16 (D. Md. 2016).  Furthermore, the State of Maryland has not waived its sovereign immunity for claims brought in federal court.  State Gov't § 12-104(a); *Dyer,* 187 F. Supp. 3d at 611.  Thus, to the extent that plaintiff seeks damages from the Warden in his official capacity, that claim is barred by the Eleventh Amendment.  *See Pennhurst,* 465 U.S. at 100-01.

### C. Eighth Amendment

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). However, the Amendment "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'" *Id.* at 102 (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). And, the Eighth Amendment imposes "certain basic duties on prison officials," such as requiring "reasonable measures to guarantee the safety of the inmates." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). The Eight Amendment is violated when an inmate is subjected to "'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg*, 428 U.S. at 173).

Notably, "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal

offenders pay for their offenses against society." *Id.* In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that "'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 770); *see also Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Lt. Iser avers that chairs were not permitted in disciplinary segregation cells due to their being used as weapons, which constituted a risk to institutional security and inmates' safety.

That assertion is uncontroverted. Moreover, plaintiff has failed to establish that the lack of a chair in his cell was the proximate cause for his cellmate falling on his leg, as alleged.

As to the flooding of Pevia's cell, there can be no dispute that the flooding of an inmate's cell with water containing biological hazards could create a serious risk to inmate health and safety. But, the medical records show otherwise. And, plaintiff has failed to demonstrate that he was injured by the flooding of his cell.

Moreover, plaintiff fails to provide sufficient facts to establish deliberate indifference by the Warden, either as to the flooding of his cell or as to the denial of a chair. As indicated, in a § 1983 claim, a defendant cannot be found liable under a theory of vicarious liability or respondeat superior. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Thus, Nines's status as the Acting Warden of NBCI and the overall supervisor of all NBCI personnel does not in itself subject him to liability.

Moreover, under § 1983, liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted).

Neither the Complaint nor the ARPs attached to it describes any personal involvement by the Warden in plaintiff's health care. As the Warden stated in his Declaration, he expects staff to comply with directives and policies relating to inmate housing and facility conditions. Nines's

denial of plaintiff's ARP requests and appeals does not alone establish liability. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v.Ortiz,* 307 Fed, App'x. 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")).

The record does not contain facts upon which a reasonable jury could find in plaintiff's favor. Therefore, the court will grant the Warden's Motion as to the Eighth Amendment claims.

### D.      Preliminary Injunctive Relief

Plaintiff's request for injunctive relief is also denied. A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). For the reasons discussed above, plaintiff has failed to demonstrate the likelihood of success on the merits and for this reason alone his request for injunctive relief must be denied. Moreover, plaintiff has also failed to demonstrate that

he is likely to suffer irreparable harm or that the balance of equities tips in his favor.

### IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment will be GRANTED and judgment will be ENTERED in favor of defendant and against plaintiff.[4]   A separate Order follows.

January 23, 2020                                    _____/s/_____
Date                                                          Ellen L. Hollander
                                                                United States District Judge

---

[4] Having found no Eighth Amendment violation, the court need not address defendant's other defenses.